IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-324-F-1

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ARNOLD OGDEN JONES, II, | ) | |
| | ) | |
| Defendant. | ) | |

Before the court are Defendant's motions to dismiss count three for failure to state an offense and to require the Government to elect between counts one and two pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure. [DEs 38, 39]. The Government opposes both motions. [DEs 40, 42].

## I. BACKGROUND

The following facts alleged in the indictment are assumed to be true for the purposes of both motions. *See United States v. Matzkin*, 14 F.3d 1014, 1019 (4th Cir. 1994).

The indictment alleges that from about October 10, 2015 and continuing until November 3, 2015, Defendant – a sitting North Carolina Superior Court Judge – contacted and sought the assistance of a Federal Bureau of Investigation ("FBI") task force officer ("TFO")[1] in acquiring and disclosing certain text messages requested by Defendant. On October 10, 2015, Defendant requested via a text message that the TFO "get access to text[] messages exchanged between 2 numbers and get copies of those messages." Indictment ¶ 3. Defendant stated the requested texts were "just for [him]" and they "involve[d] family." *Id.* ¶ 5. Defendant specified the phone

---

[1] The TFO had been duly sworn as a Special Deputy United States Marshal.

numbers associated with the text messages sought and also offered to pay the TFO for copies of said messages. *Id.* ¶ 3.

Around October 19, 2015, the TFO advised Defendant that the TFO lacked probable cause to retrieve the requested texts messages, but offered to continue to try to do so at Defendant's request. *Id.* ¶ 8. Defendant responded, "I want down low – see what you can do without drawing attention." Defendant responded further that "[t]his involves family so I don't want anyone to know." *Id.*

On or about October 27, 2015, Defendant and the TFO met inside a vehicle. During the meeting, the TFO advised that he wanted to confirm the phone numbers from which Defendant sought text messages prior to visiting a federal magistrate judge. *Id.* ¶ 9. Defendant promised the TFO that his involvement in obtaining the text messages would "never come out" and that the TFO could "trust [Jones] one million percent." *Id.* Also during this meeting, Defendant discussed the TFO's fee for acquiring the requested texts, stating he was "serious" about payment. In confirming that he was not seeking a favor, Defendant stated, "No, no, no, You've had to take time, and I'm glad to do something. Do you follow me?" *Id.* Defendant and the TFO agreed upon "a couple of cases of beer" as payment. *Id.*

On or about October 28, 2015, the TFO advised Defendant that he had obtained a federal search warrant for the requested text messages. *Id.* ¶ 4. The TFO advised further that once he retrieved the text messages from the phone, he would contact Defendant. *Id.*

On or about November 2, 2015, the TFO notified Defendant of his receipt of the requested text messages. *Id.* ¶ 12. The following day or thereabout, Defendant advised the TFO that he had the TFO's "paycheck" in the back seat of his vehicle. *Id.* ¶ 13. Defendant and the TFO coordinated a meeting regarding the exchange of the FBI disk containing the text messages

for the "paycheck." *Id.* Ultimately, Defendant agreed to pay the TFO $100 in cash in exchange for the FBI disk. *Id.* Sometime that same day, Defendant and the TFO met in person in Goldsboro, North Carolina. *Id.* ¶ 14. Defendant delivered $100 in cash to the TFO, who in turn gave Defendant an FBI disk that was represented to contain the requested text messages. *Id.*

On November 3, 2015, a grand jury returned a three-count indictment against Defendant, charging him with bribery of a public official, 18 U.S.C. § 201(b)(1) (count 1), providing an illegal gratuity to a public official, 18 U.S.C. § 201(c)(1) (count 2), and attempted influence of an official proceeding, 18 U.S.C. § 1512(c)(2) (count 3).

## II. DISCUSSION

A motion to dismiss an indictment may be premised on perceived substantive deficiencies, including multiplicity in the indictment or failure to state an offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(ii), (iii). The court must decide every pretrial motion before trial unless good cause exists to defer its ruling. *See* FED. R. CRIM. P. 12(d). Here, Defendant argues that (1) the Government should elect between counts one and two because count 2 is a lesser included offense of count 1 (i.e., counts 1 and 2 are multiplicitous) and (2) count three should be dismissed for failure to state an offense.

### A. Charging same offense in more than one count, Rule 12(b)(3)(B)(ii)

Defendant asks the court to order the government to elect between count 1 or count 2 on the grounds of multiplicity because paying an illegal gratuity to a public official (count 2) is a lesser included offense bribing a public official (count 1).

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."[2] *United*

---

[2] "[A] series of repeated acts . . . charged as separate crimes [that] the defendant claims . . . are part of a

States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999); *accord United States v. Allen*, 13 F.3d 105, 107 (4th Cir. 1993). A multiplicitous indictment raises double jeopardy concerns.[3] The double jeopardy clause protects a defendant "against cumulative punishments for convictions on the same offense." *Ohio v. Johnson*, 467 U.S. 493, 500 (1984). "The basic inquiry in determining whether counts of an indictment are truly separate, and not multiplicious [sic], is whether proof of one offense charged requires an additional fact that proof of the other offense does not necessitate." *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978) (citing *United States v. Beacon Brass Co.*, 344 U.S. 43, 45 (1952)); *see Blockburger v. United States*, 284 U.S. 299, 304 (1932) (explaining two counts are not multiplicitous if each count "requires proof of a fact which the other does not"). In other words, "if each offense for which the defendant is tried or punished contains a separate element not present in the other, double jeopardy does not bar the . . . prosecution" of both offenses. *United States v. Farr*, 591 F.3d 1322, 1324 (10th Cir. 2010).

The double jeopardy clause is implicated if two statutes prohibit the same act or transaction, typically because one is a lesser included offense of the other. *See Rutledge v. United States*, 517 U.S. 292, 297 (1996); *Brown v. Ohio*, 432 U.S. 161, 169 (1977). The "payment of an illegal gratuity is a lesser included offense of bribery" and consequently count 2 is multiplicitous of count 1. *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998); *accord United States v. Anty*, 203 F.3d 305, 311 n.3 (4th Cir. 2000); *see United States v. Sun-Diamond Growers*, 526 U.S. 398, 404 (1999) (observing that paying an unlawful gratuity is a subset of bribery that does not include the element of specific *quid pro quo* intent).

---

continuous transaction and therefore a single crime" is another form of possible multiplicity. *United States v. Allen*, 13 F.3d 105, 107 (4th Cir. 1993).

[3] The Fifth Amendment to the United States Constitution protects against prosecution for crimes based on evidence not presented to the grand jury and it also prevents a person from being subject to double jeopardy. U.S. Const. amend. V.

A finding of multiplicity, however, is not fatal to the indictment. *See, e.g., United States v. Lewis,* No. 7:14-CR-88-FL-3, 2015 U.S. Dist. LEXIS 44195, at *4 (E.D.N.C. Apr. 3, 2015); *United States v. Valencia-Adata,* No. 5:08-CR-75-FL-1, 2008 U.S. Dist. LEXIS 70164, 2008 WL 4273206, at *2 (E.D.N.C. Sept. 17, 2008). The primary consideration in multiplicity analysis is whether "a defendant will receive multiple punishments for a single offense." *United States v. Colton,* 231 F.3d 890, 910 (4th Cir. 2000); *accord United States v. Shrader,* 675 F.3d 300, 313 (4th Cir. 2012). Even assuming *arguendo* that punishment for both count 1 and count 2 violates the double jeopardy guarantee, the court can fashion a post-trial remedy to ensure Defendant does not receive multiple punishments for a single offense. *See Valencia-Adata,* 2008 WL 4273206, at *2 (stating a court can "merg[e] or vacat[e] multiplicitous convictions"). In addition, because the Government's recitation of the facts suggests the same evidence could support both convictions, Defendant will suffer no prejudice if both counts are presented at trial. *See Lewis,* 2015 U.S. Dist. LEXIS 44195, at *4 (stating "although a multiplicitous indictment gives the jury multiple opportunities to convict a defendant, the defendant suffers no prejudice where "the same evidence [is] offered to prove all" counts).

In short, forcing the Government to elect one charge over the other could prejudice the Government's ability to obtain a conviction, and the court declines to so order.

**B.      Failure to state an offense, Rule 12(b)(3)(B)(v)**

Defendant argues that count three – violation of 18 U.S.C. § 1512(c)(2) – fails to state an offense because it does not identify an "official proceeding."[4]

To warrant dismissal under Rule 12(b)(3)(B)(iii), a defendant must "demonstrate that the

---

[4] This section is a product of the Sarbanes-Oxley Act of 2002, Pub.L. 107-204, 116 Stat. 745 (2002).

allegations therein, even if true, would not state an offense."[5] *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). Rule 7 of the Federal Rules of Criminal Procedure state that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). "Generally, an indictment is sufficient if it alleges an offense in the words of the statute, assuming those words 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence.'" *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The court must accept all allegations in the indictment as true and should regard the indictment in a "practical," rather than "purely technical," manner. *United States v. Matzkin*, 14 F.3d 1014, 1019 (4th Cir. 1994); *see United States v. Terry*, 257 F.3d 366, 371 (4th Cir. 2001) (King, J., concurring) ("It is elementary that a motion to dismiss [a count of the] indictment implicates only the legal sufficiency of its allegations, not the proof offered by the Government."). Dismissal under Rule 12(b)(3) may not be predicated upon the insufficiency of the evidence to prove the indictment's charges. *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) ("There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence.").

Title 18, United States Code, Section 1512(c)(2) provides, in relevant part, that "[w]hoever corruptly . . . influences . . . any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years or both." For purposes of § 1512, an "official proceeding" is defined in relevant part as "a proceeding before a . . . United States

---

[5] The Sixth Amendment guarantees the right to be informed of the nature and cause of the offense. The notice requirement of the Sixth Amendment is implemented by Rule 7(c)(1) of the Federal Rules of Criminal Procedure.

magistrate [judge] . . . ." 18 U.S.C. § 1515(a)(1)(A).[6]  Here, the indictment adequately tracks the statutory language.  In particular, it alleges that "[b]eginning on or about October 10, 2015, and continuing to November 3, 2015, in the Eastern District of North Carolina, ARNOLD OGDEN JONES, II, defendant herein, did corruptly attempt to influence an official proceeding, in violation of Title 18, United States Code, Section 1512(c)(2)."

The indictment also provides a general description of Defendant's conduct giving rise to the offense – that is, attempting to influence a United States magistrate judge on the fraudulent procurement of a search warrant.  For example, the indictment includes statements regarding the general procurement of a search warrant, including a magistrate judge's finding of probable cause upon reviewing a law enforcement officer's sworn affidavit.  [DE 1 ¶ 4].  The indictment alleges also that on October 19, 2015, the TFO "informed [Defendant] that the [TFO] lacked probable cause to get the text messages requested by [Defendant], but would continue to try to get the messages if [Defendant] desired."  *Id.* ¶ 8.  The indictment alleges further that Defendant met with the TFO on October 27, 2015, during which the TFO wished "to confirm with [Defendant] the phone numbers for which [Defendant] desired to receive text messages" before the TFO "went to see a federal magistrate."  *Id.* ¶ 9.

The court finds the indictment tracks the statutory language of 18 U.S.C. § 1512(c)(2) and also provides a general description of the relevant facts giving rise to the offense.  *Hamling*, 418 U.S. at 117-18 (citations omitted).  The court finds also that the alleged facts, if proven, are sufficient to support a conviction.  *See Russell v. United States*, 369 U.S. 749, 768-69 (1962).  The allegations in the indictment indicate Defendant knew he could not obtain the requested information without a search warrant from a United States magistrate judge and that the search

---

[6] The "proceeding need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1).

warrant application required the sworn testimony of a law enforcement official. The allegations indicate further that Defendant knew the TFO would be successful in obtaining the search warrant only by including false information in the search warrant application.

Defendant spends much time relying on various cases for the proposition that influencing an "ancillary proceeding" – that is, one independent of the court's authority – does not constitute an "official proceeding." The Court will not chase Defendant down this rabbit hole. One of the protections provided by the Fourth Amendment is that inferences regarding probable cause must be "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, (1948). Here, the indictment clearly indicates that Defendant knew the TFO's search warrant application would be presented to a federal magistrate judge.

### III. CONCLUSION

For the foregoing reasons, Defendant's motions to dismiss count three for failure to state an offense [DE 38] and to require the Government to elect between counts 1 or 2 for multiplicity [DE 39] are DENIED.

SO ORDERED.

This the 15th day of August, 2016.

*/s/ James C. Fox*
JAMES C. FOX
Senior United States District Judge