| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>) | |
| vs. ) | **ORDER** |
| ) | |
| ARNOLD OGDEN JONES, II, )<br>) | |
| Defendant. ) | |

Before the court are the following motions in limine filed by the Government: (1) motion to exclude nullification evidence [DE 45]; (2) motion to exclude improper characterization of issues for consideration by jury [DE 46]; and (3) motion to exclude disputed impeachment material [DE 47].[1] Defendant filed a consolidated response to the first two motions [DE 64] and a separate response [DE 63] to the third. On September 29, 2016, the court held a hearing on these motions. During the hearing, the Government submitted a Memorandum Concerning Enforcement of Order Excluding Entrapment Evidence (Government's Hearing Memo") [DE 97] and Defendant submitted a Memorandum in Opposition to Government's Motion to Exclude Argument and Cross-Examination Inquiry ("Defendant's Hearing Memo") [DE 93]. This Order serves to memorialize and supplement the court's oral rulings allowing each motion.[2]

---

[1] "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 (1984).

[2] The court limits its factual recitation to those facts relevant to the issues essential to the resolution of the pending motions. Additional background information is presented in the court's order entered September 19, 2016. *See* [DE 88]; *United States v. Jones*, No. 5:15-CR-324-F-1, 2016 U.S. Dist. LEXIS 127113 (E.D.N.C. Sept. 19, 2016).

## I. LEGAL STANDARD

"The purpose of a motion in limine is to avoid injecting into trial matters which are irrelevant, inadmissible, [or unfairly] prejudicial." *Keehn v. Lucas*, No. 09-16, 2012 U.S. Dist. LEXIS 10838, at *7 (W.D. Pa. Jan. 30, 2012). Here, the instant motions seek to exclude evidence or argument at trial about the conduct of the underlying investigation and allegations of misconduct lodged against a witness critical to the Government's case on the basis of inadmissibility, irrelevance or unfair prejudice.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This opportunity includes a defendant's right under the Sixth Amendment's Confrontation Clause to cross-examine government witnesses on matters bearing on credibility, including relevant evidence of bias or ulterior motive. *Crawford v. Washington*, 541 U.S. 36, 59-61 (2004); *United States v. Turner*, 198 F.3d 425, 429 (4th Cir. 1999). An effective cross-examination "exposes to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. 308, 318 (1974).

The Confrontation Clause does not, however, guarantee unfettered cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (stating it "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish"). The trial judge retains "wide latitude" to impose reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues . . . or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).

## II. MOTIONS TO EXCLUDE NULLIFICATION EVIDENCE & ARGUMENTS MISCHARACTERIZING ISSUES

The Government seeks exclusion of the following evidence or argument at trial: (1) federal agents were obligated to advise Defendant that his request for disclosure of a third party's text messages was illegal or should have refused Defendant's illegal request in lieu of an official investigation; (2) the Government overcharged Defendant and could have brought less serious charges against him; (3) the legal issue for the jury's consideration is determining the alleged wrongdoer (i.e., Defendant or the Government); and (4) the jury's verdict should constitute "a ringing denunciation" of the Government's investigation or methods. In short, the Government seeks to exclude evidence or argument, explicit or implicit, in support of entrapment.

### A. Background

Statements by defense counsel to the media concerning Defendant's charges are the impetus for these two motions.[3] The statements at issue were memorialized in two articles written by reporters of WRAL News in Raleigh, North Carolina and dated November 4, 2015 and March 13, 2016.[4] [DEs 45-1, 46-1]. In the November 2015 article, defense attorney Elliot Abrams is quoted as describing Defendant's charges as "excessive" and stating, "There's a number of less serious crimes that could have been charged here that may have been more appropriate." [DE 45-1]. Mr. Abrams is quoted further as stating, "In my mind, if you go to a friend who's an FBI agent and it's illegal, the FBI agent should say, 'I can't do that. It's illegal.'" *Id.* Mr. Abrams' position is subsequently referenced in the March 2016 article. *See* [DE 46-1]

---

[3] Defendant is represented by multiple counsel.

[4] *See* Judge Faces Re-election, Federal Charges at Same Time, WRAL.com, March 13, 2016, available at http://www.wral.com/-judge-faces-re-election-and-federal-charges-at-same-time/15506899/ (last visited Sept. 27, 2016); NC Superior Court Judge Arrested on Bribery, Corruption Charges, WRAL.com, Nov. 4, 2015, available at http://www.wral.com/nc-judge-charged-with-offering-fbi-agency-cash-for-text-info/15059802/ (last visited Sept. 27, 2016).

(noting "[o]ther lawyers have suggested that the officer with whom Jones was dealing should have said, 'I can't do that. It's illegal,' rather than immediately launching a corruption sting").

In the March 2016 article, WRAL indicated that defense counsel Joseph Cheshire "expects to go to trial and raise questions about the handling of the case." [DE 46-1]. The article quotes Mr. Cheshire as stating, "The question for the jury is, 'Who did something wrong, Arnold Jones or the United States of America through its Justice Department." *Id.* According to the article, Mr. Cheshire also commented that "Jones' case has a lot of in [sic] common with Soles'" – a former state senator charged by the Government in 1983 with bribery and represented by Mr. Cheshire (the "*Soles* case"). *Id.* According to a 1983 newspaper article on the *Soles* case, Mr. Cheshire "argued the federal government abused its power by going too far in an effort to get" Soles. Mr. Cheshire also argued that "the jury [in the *Soles* case] should deliver a not guilty verdict that would be a 'ringing denunciation' of the government's tactics in the undercover investigation."[5]

Defense counsels' statements in the November 2015 and March 2016 articles prompted the Government to inquire of Defendant's intent to assert the affirmative defense of entrapment. When Defendant initially advised of his intent to plead this defense, the Government advised of its intent to seek exclusion of entrapment evidence and argument or in the alternative, to admit rebuttal evidence regarding Defendant's alleged predisposition to pay for illegal services. Ultimately, on June 14, 2016, the parties entered into a Stipulation and Order Concerning Certain Trial Evidence ("Stipulation and Order"), wherein Defendant agreed to refrain from presenting evidence or argument supporting an affirmative defense of entrapment or a character defense in

---

[5] *See* Judge Relieves Soles of 3 Charges; One Left, Wilmington Morning Star, August 9, 1983, available at https://news.google.com/newspapers?nid=1454&dat=19830809&id=eN5OAAAAIBAJ&sjid=ihMEAAAAIBAJ&pg=6237,2364674&hl=en (last visited Sept. 27, 2016); [DE 46-2].

exchange for the Government's agreement not to present evidence or argument concerning Defendant's alleged payments for illegal services. [DE 30]. Thereafter, the Government moved for exclusion of nullification evidence and improper characterization of the relevant issues.

## B. Defendant is prohibited from presenting entrapment evidence or argument in any form.

Initially, the impetus for filing these motions was unclear to the court in light of the Stipulation and Order jointly sought by the parties. Defendant's consolidated response, however, shed light on the Government's rationale. Most critically, concern by the Government that Defendant may intend to offer entrapment evidence and argument. Defendant's arguments presented during the hearing, coupled with Defendant's Hearing Memo, substantiate the Government's concern.

Entrapment is an affirmative defense comprised of two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Matthews v. United States*, 485 U.S. 58, 63 (1988); *accord United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004). To show inducement, a defendant must demonstrate "solicitation plus some overreaching or improper conduct on the part of the government." *Hsu*, 364 F.3d at 200; *see United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993) (stating inducement "involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party"). Predisposition "focuses upon whether the defendant was an unwary innocent or instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Mathews*, 485 U.S. at 63 (internal quotation marks omitted).

During the hearing, Mr. Cheshire assured the court – more than once – that the defense had no intent of offering entrapment evidence and argument at trial. Defendant's own

statements, however, severely undermine counsel's assurances. Such statements include the following:

1. The FBI engaged in "an operation to set Jones up for a federal prosecution."[6]

2. The FBI "expend[ed] scarce time and resources to set up an elected public official."[7]

3. Law enforcement "acted wrongfully, . . . their investigative tactics were untoward, and [] this investigation constituted an abuse of power."[8]

4. Defendant "cannot be excluded from arguing that it [i.e., who did something wrong, Arnold Jones or the Government] is an issue that the jury should consider."[9]

5. Arguing the jury should "consider that [its] verdict . . . will send a message to the police and the federal government that it cannot get away with low grade investigative tactics."[10]

6. Defendant "must be able to say that this case constitutes an abuse of power – for a bad faith investigation constitutes an abuse of power."[11]

7. The government "initiated a sting operation."[12]

8. The "jury must be informed that this set up was done consciously and intentionally."[13]

In making these statements, Defendant argues entrapment. That Defendant intends to offer entrapment evidence and argument at trial is further reflected by Mr. Cheshire's Freudian slip during the hearing:

> We're not going to try to trash the government but but [sic] by saying the government could have done A, B and C and allow the jury to know but they [sic] chose not to do A, B and C, so the jury can't know because they [sic] fear what the answers to A, B and C were, is just a classic, appropriate defense for a jury to hear in an entrapment case…in in in in [sic] these kinds of charges.[14]

---

[6] [DE 64 at 2].
[7] *Id.* at 5.
[8] *Id.* at 6.
[9] [DE 93 at 5–6].
[10] *Id.* at 6.
[11] *Id.* at 6.
[12] *Id.* at 7.
[13] [DE 93 at 5-8].
[14] FTR Gold Recording of Hr'g, Joseph Cheshire, September 29, 2016 (10:34:44 a.m. to 10:35:10 a.m.)

Defendant counters that these statements simply attack the reliability of the investigation and any prohibition on presenting such evidence or argument contravenes the Supreme Court's decision in *Kyles v. Whitley*, 514 U.S. 419 (1995).[15] In particular, Defendant claims exclusion of this evidence or argument prevents him from establishing bias and improper motives of the Government's key witnesses. Defendant's argument on this point is nothing more than smoke and mirrors, proffered to conceal a poorly veiled attempt to circumvent the plain meaning of the Stipulation and Order and plant in the minds of the jury wrongdoing by the Government.

*Kyles* and other cases cited by Defendant support only the unremarkable proposition that attacking the veracity of police investigations is a typical defense strategy. *See, e.g., Mendez v. Artuz*, 303 F.3d 411, 416 (2d Cir. 2002) (finding suppressed evidence material where defendant could have "used the suppressed information to challenge the thoroughness and adequacy of the police investigation"); *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) (discussing the government's "duty to disclose evidence of a flawed police investigation"); *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) (finding the withheld evidence "raise[d] serious questions about the manner, quality, and thoroughness of the investigation that led to [the defendant's] arrest"); *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (finding suppressed statement could have been used for "discrediting, in some degree, . . . the police methods employed in assembling the case against [the defendant]"); *Orena v. United States*, 956 F. Supp. 1071, 1100

---

[15] In *Kyles*, the prosecutor did not turn over to the defense several pieces of evidence, including *inter alia*, various inconsistent statements made to the police by an informant who was never called to testify. *Kyles*, 514 U.S. at 428-29. The Court observed that such evidence, if disclosed, "would have raised opportunities to attack not only the probative value of crucial physical evidence and the circumstances in which it was found, but the thoroughness and even the good faith of the investigation." *Id.* at 445 (noting the prosecution considered the informant "essential" to the investigation and, indeed, "made the case" against the defendant). Recognizing the effectiveness in certain cases of attacking the quality of the policy investigation, the Court held that a prosecutor has "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.* at 437.

(E.D.N.Y. 1997) (observing "destroying the bona fides of the police is a tactic that has never lost its place in the criminal defense reasonable doubt armamentarium"). Defendant seemingly ignores, however, another unremarkable and long-recognized proposition in criminal law:

> It is well settled that the fact that officers or employees of the Government *merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises.* The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law.

*Sorrells v. United States*, 287 U.S. 435, 441-42 (1932) (internal citations omitted; emphasis added).

It is evident Defendant faults law enforcement for affording him the opportunity to carry out his illegal request and offer. In describing the investigation as a "set up," a "sting" operation and an "abuse of power," Defendant seeks not merely to discredit the investigation but to intimate to the jury a criminal design that originated with law enforcement. *See* Sting, Black's Law Dictionary (10th ed. 2014) ("An undercover operation in which law-enforcement agents pose as criminals to catch actual criminals engaging in illegal acts."). As the Government stated during the hearing, any such argument – express or implied – amounts to an imperfect entrapment defense and is thus prohibited by the Stipulation and Order.

More importantly, presentation of entrapment evidence and argument at trial will invite or encourage jury nullification. Jury nullification occurs when the jury chooses to reject evidence or ignore law, thereby excusing a defendant's conduct "because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." Jury Nullification, Black's Law Dictionary (10th ed. 2014). "While . . . a jury may render a verdict at odds with the

evidence or the law," counsel is prohibited from "encourag[ing] jurors to violate their oath." *United States v. Gonzalez*, 596 F.3d 1228, 1237 (10th Cir. 2010); *see United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) (noting although "a jury has the power of nullification[,] . . . defense counsel is not entitled to urge the jury to exercise this power"); *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (stating "the power of juries to 'nullify' or exercise a power of lenity is just that – a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent").

In sum, Defendant is prohibited from "serenad[ing] [the] jury with the siren song of nullification" in the form of presenting entrapment – including "imperfect" entrapment – evidence and argument at trial. *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) (noting a court's authority to "block" any nullification attempts).

### III. MOTION TO EXCLUDE DISPUTED IMPEACHMENT MATERIAL

The Government seeks exclusion of evidence or argument concerning three categories of evidence: (1) the personnel file of the FBI Task Force Officer Matthew Miller ("TFO Miller"); (2) the civil case against TFO Miller pending in this district, *Pride v. Pierce*, No. 5:14-CV-781-BO; and (3) the factual circumstances giving rise to state criminal cases *North Carolina v. Braswell*, Nos. 12CR54146-54186, 12CR55085-55378 and 12CR54209, and *North Carolina v. Austin*, Nos. 12-CRS-54144-45, 12-CRS-54188 and 12-CRS-54208, including details concerning the execution of the underlying search warrant and the legal reasoning behind the subsequent finding by Defendant – as the judge overseeing those cases – that the search warrant was invalid.

Defendant initially argued any limitation of his ability to cross-examine TFO Miller regarding these matters prevents him from effectively attacking TFO Miller's credibility, thereby violating his rights under the Confrontation Clause. In Defendant's Hearing Memo, he reiterated

this position but conceded excluding the "specifics of the individual allegations of wrongdoing against Miller" was proper because it "would not add much to the showing of his self-interested bias to charge a high-profile defendant." [DE 93 at 10, 12]. During the hearing, Mr. Cheshire advised the court that Defendant will not argue any of these matters with the exception of eliciting testimony regarding the execution of the *Braswell* and *Austin* search warrant and in particular, the death of an individual during the execution thereof.

## A.    Unsubstantiated Allegations of Misconduct

Rule 608 of the Federal Rules of Evidence provides mechanisms for attacking a witness's character for truthfulness or untruthfulness. Relevant here, Rule 608(b) permits cross examination of a witness regarding prior instances of conduct, at the discretion of the court, when that prior conduct is probative of a witness's character for truthfulness. Misconduct that is probative of truthfulness includes "perjury, fraud, swindling, forgery, bribery, and embezzlement." *United States v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981). Unsubstantiated complaints of prior conduct directed against a witness by third parties, however, are not admissible under Rule 608(b). *See United States v. Harris*, 551 F. App'x 699, 706 (4th Cir. 2014) (affirming the district court's exclusion of "brutality" and "excessive force" allegations in an officer's disciplinary records under Rule 608(b)). Inadmissible unsubstantiated complaints include "mere accusations, rather than findings, of misconduct based on untruthfulness." *Id.* (internal quotation marks omitted). Accordingly, Defendant may not inquire about the alleged acts identified in TFO Miller's personnel file or *Pride v. Pierce* on cross-examination of any witness, including TFO Miller.

B.   ***Braswell* and *Austin* Cases**

During the hearing, Defendant argued that reference to the *Braswell* and *Austin* cases – in particular, the death of a civilian during the execution of a search warrant later deemed invalid – should be permitted as impeachment evidence on cross-examination to demonstrate TFO Miller's bias against Defendant.

Cross examination of a witness to show bias as a means of attacking a witness's credibility is a matter of right. However, the admissibility of bias evidence is subject to Rule 403 of the Federal Rules of Evidence and the probative value of admitting such evidence must not be substantially outweighed by any prejudicial effect. Here, the court finds the probative value of the execution of the search warrant, including the death of a civilian, and the legal issues surrounding the suppression of the warrant, if any, is substantially outweighed by the danger of unfair prejudice, confusing the issues and wasting valuable time. *See* FED. R. EVID. 403. Accordingly, the court allows the Government's motion to the extent of prohibiting defense counsel from referring in any manner to the technical deficiencies in the warrant application or the details regarding the execution of the search warrant, including the death of a civilian.

The court is compelled to remind counsel of their professional and ethical duties to their clients **and** the court. The court will not countenance an end-run around the Federal Rules of Evidence or the court's orders in this matter, including the Stipulation and Order Concerning Certain Trial Evidence.

### IV.   CONCLUSION

For the foregoing reasons, it is ordered as follows:

1. The Government's Motion in Limine Concerning Jury Nullification [DE 45] is ALLOWED.

2. The Government's Motion in Limine to Exclude Improper Characterization of Issues for Consideration by Jury [DE 46] is ALLOWED.

3. The Government's Motion in Limine to Exclude Disputed Impeachment Material [DE 47] is ALLOWED IN PART and DENIED IN PART.

    a. Defendant shall not introduce any argument, evidence, testimony, insinuation, reference, or assertion relating to any litigation, rulings, or accusations against TFO Miller in unrelated legal proceedings or unrelated disputed matters between Defendant and any third party.

    b. Defendant shall not introduce any argument, evidence, testimony, insinuation, reference, or assertion relating to the *North Carolina v. Braswell* and *North Carolina v. Austin* cases, and in particular, the underlying investigation, execution of the search warrant, including the death of a citizen, or the technical deficiencies of the search warrant language.

4. Defendant shall not introduce any argument, evidence, testimony, insinuation, reference, or assertion that the Government (1) "intentionally set up" Defendant, (2) initiated a "sting operation," (3) abused its power or committed wrongdoing by not advising Defendant of the illegality of his request, or (4) abused its power or committed wrongdoing by not refusing Defendant's request.

5. Defendant shall not introduce any argument, evidence, testimony, insinuation, reference, or assertion that the Government overcharged Defendant and could have brought less serious charges against him.

6. Defendant shall not introduce any argument, evidence, testimony, insinuation, reference, or assertion that the verdict in this case should be a denunciation of the Government's investigation tactics or methods.

7. The parties remain bound by the Stipulation and Order Concerning Certain Trial Evidence [DE 30]. To that end, the court will instruct the jury that the affirmative defense of entrapment does not exist in this case.

SO ORDERED.

This the 3rd day of October 2016.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge